UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERNEST ROBBINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 4186 |
| | ) | |
| CATERPILLAR, INC., | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ernest Robbins, age 61, has been employed by Defendant Caterpillar, Inc. since 1973. In this lawsuit, Robbins claims that Caterpillar discriminated against him in violation of the Age Discrimination in Employment Act ("ADEA"), subjected him to a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, and retaliated against him for cooperating with the Environmental Protection Agency ("EPA") in violation of the Illinois Whistleblower Act ("IWA"). The alleged acts of discrimination include Defendant's placing Robbins on an involuntary medical leave of absence in September 2005. Caterpillar has moved for summary judgment, arguing that there are no disputes of material fact concerning any of the claims properly before the court, and that Caterpillar is entitled to judgment on those claims as a matter of law. For the reasons set forth below, the motion is granted.

## PROCEDURAL HISTORY

On June 29, 2005, Robbins filed a charge against Caterpillar with the Equal Employment Opportunity Commission ("EEOC"). (Def.'s 56.1 ¶ 6.) Robbins's EEOC charge alleged that Caterpillar discriminated against him on the basis of age by subjecting him to "different terms and conditions of employment" than younger workers. (Attachment to Robbins Dep., Ex. 2, Ex. 3 to Def. 56.1.) The EEOC notified Plaintiff of his right to sue on May 17, 2006, and he filed a complaint in this court on August 3, 2006, alleging that Caterpillar violated the ADEA, 29 U.S.C. § 623(d); promoted a sexually hostile work environment in violation of Title VII, 42 U.S.C. § 2000e *et seq.*;

and retaliated against him for having cooperated with an EPA investigation, in violation of the IWA, 740 ILCS § 174/15 (2008).

## FACTS

The facts are drawn principally from the parties' Local Rule 56.1 Statements. Notably, Plaintiff's response merely presented his own version of the facts, rather than a paragraph-by-paragraph response to Defendant's statement of facts as required by the Local Rules. The court has nevertheless reviewed Plaintiff's submissions and all documents in the factual record, including Plaintiff's EEOC charge of discrimination and transcripts of the depositions of Plaintiff Ernest Robbins; Donna Graefen, a co-worker; Matthew Neu, M.D., the medical director of Defendant's Joliet facility; Ming Xu, M.D., Plaintiff's treating physician; Tamara Holman, Caterpillar Human Services Manager; and Michael S. Martin, Plaintiff's supervisor.

**Work Environment**

Robbins has been a Union employee at Caterpillar's Joliet, Illinois facility for more than 35 years, where he has held positions including test and assembly technician, grinder operator, and most recently, machinist. (Def.'s 56.1 ¶ 7.) While operating as a test and assembly technician from December 2004 until March 2005, Robbins reported to supervisor Mike Martin. (Def.'s 56.1 ¶ 8.) On January 7, 2005, Robbins was involved in an altercation with co-worker Jamie Martinez and two other employees. Robbins testified that his co-workers "created an incident where I broke my finger," "destroyed my lunch," and "start[ed] screwing around with [Robbins's] work stuff." (Robbins Dep. 79; 80.) Robbins was suspended following this altercation; when asked whether he believed this decision was motivated by his age, he testified, "I said, no. . . . [T]hey walked me out because they said I threatened [a co-worker.]" Robbins was indefinitely suspended as a result of the altercation, but he was ultimately permitted to return to work on February 7, 2005, in a different work area, separated from the co-workers involved in the altercation. (Def.'s 56.1 ¶¶ 13-14.)

On June 29, 2005, Robbins, then 56 years old, filed a charge of discrimination with the

2

EEOC, in which he alleged that he and another senior employee, known to Robbins only as "Cowboy," suffered harassment based on their age. (Robbins Dep. Ex. 4; Robbins Dep. at 62-64.) The EEOC charge referred specifically to the January 2005 altercation. (Robbins Dep. Ex. 4.) In addition, Robbins claimed to have been subjected to different terms and conditions of employment than other employees, unfairly questioned about his productivity, and threatened with discipline for circumstances he could not control, such as other employees visiting his work area. (*Id.*) He testified that Cowboy suffered harassment from co-workers, as well, including co-workers urinating in his lunch box, stealing his tools, and sabotaging his work area due to his seniority. (Robbins Dep. at 65-68.)

At the time he filed the charge, Robbins testified, he felt like an outcast because Defendant's management, specifically supervisor Mike Martin, monitored his productivity more scrupulously than other employees and ordered younger employees to neither approach nor speak with him at a time when he was supposed to be training for a new position and required interaction, for training purposes, with other employees. (Pl.'s Resp. to Def.'s Mot. ¶¶ 11-16.) In addition, Plaintiff claims other employees threw oily rags into his work station, poured sewage into his lunch boxes, and sabotaged his work station. (*Id.* at ¶¶ 15-17.) Robbins believed he was harassed due to being the "oldest person on the line," having more seniority with the Union, and having greater overtime preference. (Robbins Dep. at 73-74.) He pointed out that if his co-workers were successful in discouraging him from working overtime, they themselves would get more overtime work. Robbins believed that the desire for overtime assignments is what motivated his co-workers to harass "Cowboy," as well. (*Id.* at 70, 73.)

In July 2005, Robbins successfully bid out of his position as a test and assembly worker and was moved into a position as a grinder operator. (Def.'s 56.1 ¶ 9.) As both a test and assembly technician and grinder operator, Robbins met production requirements and never received poor performance evaluations. (Def.'s 56.1 ¶ 10.)

**Cooperation with EPA**

Robbins claims that in July 2004, he cooperated with EPA investigators by sending them e-mails and providing photographs of Caterpillar's "E-Building," during their investigation of pollution into the waterways of Illinois. (Def.'s 56.1 ¶ 33.) At his deposition, however, Robbins was unable to identify the investigators by name, did not furnish copies of the e-mails or photos, and offered no evidence of any further contact with the agency. (Robbins Dep. at 140-42.) Robbins believes his co-workers harassed him because he reported Caterpillar to environmental authorities, but he admits that he never told anyone at Caterpillar that he had made these reports. (*Id.* at 57-58; 60-63.) Asked at his deposition whether he revealed his reports to a supervisor, Robbins responded, "I didn't tell nobody." (*Id.* at 62.) Beyond his testimony, there is no other evidence of Robbins's alleged interaction with the EPA, and no evidence of any kind that Caterpillar managers were aware of the interaction.

**Restroom Graffiti Images**

In August 2005, co-workers harassed Robbins by depicting him in bathroom drawings that implied his engagement in a sexual act with a female co-employee, Donna Graefen. (Pl.'s Resp. to Def.'s Mot. ¶ 4.) Upon discovering the graffiti in the men's bathroom in August 2005, Robbins reported his finding to Tamara Holman of Caterpillar's human resources department, asked that the drawing be removed, and offered to pay for the paint required to conceal the graffiti. (*Id.* at ¶¶ 6-7.) Holman accompanied Robbins and Donna Graefen to the bathroom and took three photographs of the graffiti. (Robbins Dep. at 99-100.) Holman testified that she made a report of the incident and directed maintenance staff to remove the graffiti immediately. (Holman Dep., Ex. 7 to Def.'s 56.1 Statement at 37-39.) Robbins claims that Caterpillar management made no other response to the bathroom graffiti for "a week and a half" after Holman's investigation and that various co-workers threatened him, pressuring him not to complain further. (Robbins Dep. at 105-09.) Robbins acknowledged, however, that he did not return to the bathroom to see whether the

drawings were still there. Donna Graefen testified that Ms. Holman said it was too expensive to paint over the graffiti, and that although "they" (Graefen did not say who) "were supposed to grind it off right away," it in fact took "about a week for them to grind it off." (Graefen Dep., Ex. 2 to Pl.'s Resp. at 20-21.)

Robbins believed that a Caterpillar employee, Ken Bunker, was responsible for the graffiti, but that the drawings were unrelated to his age or his gender. (Robbins Dep. at 103.) Instead, Robbins suggested that Bunker made the drawings in order to amuse or satisfy his co-workers. He testified:

> Q. Do you think these drawings had anything to do with your age?
>
> A. No, he did that to stay in the group.
>
> Q. Okay. How about you, Ernie, as you look at these drawings, do you think they have anything to do with your age?
>
> A. No, they don't have anything to do with it. They don't say age or anything in them.
>
> Q.. Okay. How about your sex or gender?
>
> A. No.

(*Id.*)

In a grievance letter submitted on September 6, 2005 to Chuck Johnson, the foreman in E-Building where the graffiti occurred, Robbins stated:

> Why is Caterpillar people doing this to me? This is how I feel: discriminated, hurt, ashamed, point of attention, low, like I was not even a human being anymore. . .like I would never fit in, secondary, inferior, stupid, worthless, belittled. . .There is no way of explaining to you how degrading this makes me feel (Caterpillar having these people do this). Picture was taken of this, don't lose it.

(Robbins Dep. Ex. 8.)

**Involuntary Medical Leave**

On September 7, 2005, one day after Robbins filed his bathroom graffiti grievance, Bob Peters, a Caterpillar employee, told Robbins to meet with several individuals—Craig Morris of

5

Caterpillar's Labor Relations department; Dr. Matthew Neu, the facility's medical director; Pat Lonhart, another Caterpillar representative; and Joe Nuske, Robbins's own union representative. Dr. Neu testified that the language in Robbins's grievance raised concerns about Robbins's well-being and mental health. (Neu Dep., Ex. 5 to Def.'s 56.1 at 11-13.) Dr. Neu asked Robbins whether he felt like committing suicide or hurting someone else, and Robbins responded no to both questions. (Robbins Dep. at 114.) Robbins claims that at this meeting he again offered to pay for paint to cover the graffiti, but Craig Morris responded that the bathrooms had "special paint" that could not be drawn on. *Id.* (Assuming that Mr. Morris made such a statement, the court is curious about how it was possible for someone to draw on this "special paint" in the first place.) Although there is no evidence of any mention of the environmental complaint as the meeting, Robbins testified that he left the meeting feeling like Caterpillar wanted to get rid of him, stemming from his earlier cooperation with the EPA. (*Id.* at 117.)[1]

Immediately after the meeting, Robbins testified, Craig Morris placed him on involuntary medical leave for allegedly threatening the employees that Robbins believed were responsible for sabotaging his work station. (Robbins Dep. at 117; Pl.'s Resp. to Def.'s Mot. ¶ 19.) Robbins received partial salary while on medical leave from September 2005 through June 2006. (Def.'s 56.1 ¶ 23.) He also received treatment from mental health specialists, including Dr. Ronald Wuest, a psychiatrist who treated him with prescription medications, and Dr. Linda Gruenberg, a psychiatric specialist in Chicago. (*Id.* at ¶ 24.) In December 2005, Robbins was hospitalized for chest pains and anxiety. (*Id.* at ¶ 27.) Robbins was treated by Dr. Wuest and Dr. Gruenberg before being

---

[1] Defendant asserts that Robbins admits the decision to place him on medical leave "was not because of his age, sex, or any alleged environmental complaint." (Def.'s 56.1 ¶ 22.) Plaintiff's failure to respond to Defendant's Rule 56.1 submission leaves this assertion unrebutted, but the court notes that the deposition transcript pages Defendant cites do not support it. On page 108 of his deposition, Plaintiff testified that he believed he was placed on leave because he had filed a grievance. On page 117, he testified, "They just wanted to get rid of me. I think it goes back to the environmental." On pages 143-44, he commented that the timing of his suspension in relation to his EPA communication was suspicious.

6

allowed to return to work less than a year after his medical leave. (*Id.* at ¶¶ 25-28.) He remains employed with Caterpillar. (*Id.* at ¶ 1.)

Robbins is unaware of any other employees placed on medical leave. He testified that it is not "his business" to know another's personal situation. (Robbins Dep. at 133.)

## DISCUSSION

Plaintiff alleges that Caterpillar discriminated against him on the basis of his age in violation of the ADEA, promoted a sexually hostile work environment, and retaliated against him for having cooperated with the Environmental Protection Agency, in violation of the Illinois Whistleblower Act. Defendant has moved for summary judgment on these claims. Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of Law." FED. R. CIV. P. 56(c). In determining whether there is a genuine issue of fact, the court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). The party who bears the burden of proof on an issue may not rest solely on the allegations made in the pleadings or on speculation, but must affirmatively demonstrate the existence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

### I.      Age Discrimination

The prima facie elements of discrimination are the same under Title VII and the ADEA. *See Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). A plaintiff may prove a violation of the ADEA or Title VII using either the "direct method" or "indirect method" of proof. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060-61 (7th Cir. 2003). In this case, Plaintiff proceeds by way of the "direct method." (Pl.'s Resp. at 6.)

A plaintiff may establish unlawful discrimination under the direct method by presenting direct

or circumstantial evidence that creates a "convincing mosaic of discrimination." *See Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). The Seventh Circuit has identified three types of such circumstantial evidence. *Petts v. Rockledge Furniture, LLC*, 534 F.3d 715, 720 (7th Cir. 2008). First, a plaintiff may present evidence of suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. *Id.* at 721. Second, a plaintiff may have evidence demonstrating that similarly-situated employees outside the plaintiff's protected class received systematically better treatment. *Id.* Third, a plaintiff might show that she was qualified for the job but was passed over for or replaced by a similarly-situated person not in the protected class, and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. *Id.*

Robbins presents no evidence that younger similarly-situated employees systematically received better treatment, nor does he offer evidence that Defendant passed him over or restricted him in any way; the evidence shows he received the assignments for which he bid and remains gainfully employed by Caterpillar. Robbins's claim instead focuses on harassment by his co-workers, including the bathroom graffiti. Without identifying other specific incidents, Robbins complains that his co-workers ridiculed him and interfered with his work, and that Caterpillar managers took no effective action to correct the situation. Donna Graefen confirmed that during a two-to-three month period, "blue shop towels were being dropped in oil and then thrown on the floor" in the area where Plaintiff worked. Caterpillar does not suggest what motivated this harassment, nor explain why, if this testimony is true, the conduct was tolerated.

Yet there is no basis in the record for an inference that the harassment, or Caterpillar's alleged toleration of it, was a function of age discrimination. To survive summary judgment, the plaintiff must present evidence of a link between his protected status and the adverse employment action. *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). Robbins presents

8

no such link here. In fact, Robbins himself testified that he does not believe the graffiti episode was motivated by his age. Robbins contends, instead, that Caterpillar unjustly placed him on medical leave shortly after he filed a grievance concerning the bathroom graffiti. The grievance itself, however, does not mention Robbins's age. Moreover, the circumstances amply support Caterpillar's non-discriminatory explanation: that placing Robbins on medical leave was an appropriate response to concerns regarding his mental state. The fact that Caterpillar made medical and mental health treatment available to Robbins during the course of his leave bolsters its assertion that his mental health, not his age, motivated the decision.

It is not the court's role on summary judgment to make judgments of credibility or weigh evidence. The existence of a plausible age-neutral explanation for Caterpillar's actions fatally undermines Robbins's age discrimination claim, however, where Plaintiff himself offers no further evidence that the harassment he suffered was a function of his age. Robbins contends Caterpillar's response to the workplace harassment was inadequate, and the court agrees that, to the extent Caterpillar managers were on notice of the alleged misconduct, a more aggressive response may well have been warranted. Plaintiff has nevertheless not satisfied the court that there is any dispute of material fact with regard to his claim. However mean-spirited his co-workers were, and however inadequate the Caterpillar response, there is simply no evidence that the incidents bore any relations to his age. Indeed, when asked, Plaintiff denied that age (or sex) was a factor. Without any evidence that harassment was based on his age, or that Caterpillar's alleged failure to take corrective action was based upon Plaintiff's age, Defendant's motion for summary judgment on the age discrimination claim must be granted.

**II.     Sexual Harassment**

Robbins also claims Caterpillar violated Title VII of the Civil Rights Act of 1964, which prohibits discriminating "against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

To establish a prima facie case of hostile work environment sexual harassment under Title VII, an employee must establish: (1) he was subjected to unwelcome harassment; (2) the harassment was based on his sex; (3) the harassment was sufficiently severe or pervasive so as to alter the condition of his employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007), citing *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007). Moreover, to be actionable. a "hostile work environment must be both objectively and subjectively offensive." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). In other words, not only must the plaintiff subjectively perceive hostility or offensiveness, but his perception must be reasonable based on the circumstances. The frequency and severity of adverse comments and whether the comments were humiliating or physically threatening are among factors to be considered in determining whether an environment is objectively hostile or offensive. *Id.* at 713.

The graffiti incident was obviously upsetting to Robbins. He promptly brought it to the attention of management and twice offered to pay for paint to cover up the offensive depiction of himself engaged in a sexual act. Caterpillar claims that when Holman became aware of the problem, she took prompt action to remove the graffiti, but there is some evidence that the drawings in fact remained in place for several days after the initial complaint. There is, thus, a dispute concerning Caterpillar's commitment to addressing this problem and the other incidents of harassment of which Plaintiff complains. The court is nevertheless uncertain whether the graffiti episode, by itself, is sufficiently severe or pervasive to create a hostile environment, and, notably, Robbins himself does not attribute his co-worker's action in creating this drawing to his age or his sex.

The court need not resolve these issues, however. Defendant objects to any consideration of Robbins's claim of sex discrimination as it is beyond the scope of his underlying charge of discrimination, and the court must sustain this objection. Before bringing a Title VII suit in federal

court, a plaintiff must first file a timely charge with the EEOC alleging the same claims as those alleged in the complaint. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985). Accordingly, only claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations" may be brought subsequently in a complaint in federal court. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976). A claim in a complaint is "like or reasonably related" to an EEOC charge if there is a factual relationship between the two and the claims in the complaint could have been expected to grow out of an EEOC investigation of the charge's allegations. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002).

Robbins failed to check the "sex" box on his EEOC charge form. Failure to check the box by itself may not be fatal to Robbins's proceeding on a sex discrimination claim. *See O'Rouke v. Continental Cas. Co.*, 983 F.2d 94, 96 (7th Cir. 1993)(assuming an alert EEOC staff could have inferred an alternative claim of retaliation where employee failed to check the box but had filed a previous complaint). In this case, however, Robbins's EEOC charge was filed June 29, 2005, a full two months before the alleged sexual harassment incident occurred. Robbins cannot establish that his sexual harassment claim is like or reasonably related to his age discrimination charge because the circumstances giving rise to any alleged sexual harassment had yet to transpire. There is no evidence in the record that Robbins filed a second charge or sought to amend the earlier one, with the consequence that the EEOC has apparently had no opportunity to investigate or conciliate this claim.

The law is well-established in this area; a plaintiff must file a timely charge with the EEOC encompassing the acts complained of as a prerequisite to filing suit in federal court. *Peters*, 307 F.3d at 550. Plaintiff has failed to meet this basic requirement. Defendant's motion for summary judgment on the sexual harassment claim is therefore granted.

**III.      Illinois Whistleblower Act**

Finally, Plaintiff pursues a state claim under the Illinois Whistleblower Act ("IWA"), alleging that Caterpillar harassed and discriminated against him in retaliation for cooperating with EPA investigators in July 2004. (Def.'s 56.1 ¶ 33.) The IWA is the codification of the common law tort of retaliatory discharge. *Sutherland v. Norfolk Southern Ry. Co.*, 356 Ill. App. 3d 620, 624, 826 N.E.2d 1021, 1025 (1st Dist. 2005). The Act prohibits an employer from "retaliating against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS § 174/15 (2008). Under the statute, employees may file civil actions for "all relief necessary to make the employee whole," including damages, back pay, reinstatement and attorney's fees and costs. 740 ILCS § 174/30. To support a claim for relief under this statute, the reported activity need not be objectively unlawful; Illinois law merely requires that the employee have a reasonable good-faith belief that the reported activity was in violation of the law. *Stebbings v. Univ. of Chicago*, 312 Ill. App. 3d 360, 369, 726 N.E.2d 1136, 1144 (1st Dist. 2000).

In this case, it is unnecessary for the court to address whether Caterpillar retaliated against Robbins for cooperating with the EPA. Plaintiff has not presented any evidence or contextual details regarding his communication with the EPA, including whether he disclosed information that he reasonably believed was evidence of a violation of the environmental laws. More significantly, there is no evidence in the record that anyone at Caterpillar had knowledge of Robbins's cooperation with EPA; nor is there even the slightest indication, beyond Plaintiff's surmise, that Caterpillar was actually motivated by any such cooperation in making decisions about Robbins's employment.

At the summary judgment stage, Plaintiff is no longer free to rest on the allegations of his complaint. Plaintiff must produce evidence to support the elements of his claim. He has failed to do so. Absent the production of any evidence from which a trier of fact could conclude Caterpillar

managers were even aware of Plaintiff's conduct—let alone that they were motivated by it—Caterpillar is entitled to summary judgment on this claim, as well.

## **CONCLUSION**

For the reasons set forth in this opinion, Defendant's motion for summary judgment [40] is granted.

ENTER:

Dated:  September 29, 2009

_____
REBECCA R. PALLMEYER
United States District Judge